JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SEVEN ARTS FILMED ENTERTAINMENT )    CASE NO.: CV 11-4603 ABC (FMOx)
LIMITED, an English )
Corporation, )
     )    ORDER RE: DEFENDANT PARAMOUNT'S
            Plaintiff, )    MOTION TO DISMISS
     )
    v. )
     )
CONTENT MEDIA CORP., PLC, an )
English corporation; PARAMOUNT )
PICTURES CORP., a Delaware )
corporation, DOES 1-10, )
     )
            Defendants. )
_____

     Pending before the Court is Defendant Paramount Pictures Corp.'s

("Paramount's") Motion to Dismiss Case, filed on July 11, 2011.

(Docket No. 30.)  Plaintiff Seven Arts Filmed Entertainment Limited

("Plaintiff") opposed on July 26, 2011, and Paramount replied on

August 8, 2011.  Finding oral argument unnecessary, the Court took

this matter under submission on September 12, 2011.  (Docket No. 54.)

For the reasons below, the motion is GRANTED and the Complaint is

DISMISSED WITH PREJUDICE.

**BACKGROUND**

In this case, Plaintiff once again raises the same dispute involving the rights to five films[1] that has been repeatedly raised by Plaintiff's predecessors-in-interest against Content Media Corp.'s ("Content's") predecessors-in-interest in several cases in three different fora.  The twist in this case is that Plaintiff has now sued Paramount, which is alleged to be "the licensee of certain distribution rights in and to the Pictures from Plaintiff's Predecessors . . . and has paid and continues to pay all receipts from distribution of the Pictures to Content . . . despite demands from Plaintiff and the Predecessors requiring payment of such receipts to Plaintiff." (2011 Compl. ¶ 3.)  Plaintiff voluntarily dismissed Content, leaving Paramount as the lone defendant in this case. (Docket No. 52.)

Plaintiff's first case was filed nine years ago on September 26, 2002, in Los Angeles Superior Court by Plaintiff's predecessor Cinevisions against Content's predecessors Fireworks Entertainment ("Fireworks") and CanWest Entertainment International Distribution ("CanWest").  See <u>Cinevisions v. Fireworks Entm't, Inc.</u>, Case No. BC 282277 (L.A. Super. Ct. filed Sept. 26, 2002) (the "2002 case").[2] The complaint in that case alleged that the parties "entered into a

---

[1] The works at issue are the screenplay and film "An American Rhapsody"; the screenplay and film "The Believer"; the screenplay "Who is Cletis Tout?"; the film "Rules of Engagement"; and the film "Onegin" (the "disputed pictures").  The complaint lists the alleged copyright registration numbers. (2011 Compl. ¶¶ 12, 13.) Paramount is a licensee of certain rights in "An American Rhapsody," "Who is Cletis Tout?," and "Rules of Engagement."

[2] The Court GRANTS Defendants' unopposed request for judicial notice of court documents in the prior cases. (Docket No. 31.)  See <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1114 & n.5 (9th Cir. 2003).

contract with respect to the [disputed pictures] and certain other motion pictures" described in an August 31, 1999 contract called "Heads of Agreement." (2011 Compl. ¶ 14.) Cinevisions specifically alleged that it had co-ownership stakes in the disputed pictures by way of the Heads of Agreement (which was called the "Master Structure Agreement" in the complaint in the 2002 case). (Paramount's Request for Judicial Notice ("RJN") Ex. 2 ¶¶ 8(h), 9.)[3]

That case was removed to federal district court and dismissed by Judge Rafeedie based on a clause in the Heads of Agreement/Master Structure Agreement that selected Ontario, Canada as the proper forum. (2011 Compl. ¶ 14.) Although Cinevisions appealed, the appeal was dismissed for the failure to prosecute. See Cinevisions v. Fireworks Entm't, Inc., Case No. CV 02-9259 ER (MANx) (C.D. Cal. filed Dec. 5, 2002). Paramount was not a party to that lawsuit at any time.

Pursuant to the forum selection clause in the Heads of Agreement/Master Structure Agreement, Cinevisions filed a second case in Canada on April 23, 2003, alleging the same co-ownership claims against Fireworks and CanWest as those raised in the 2002 case. (2011 Compl. ¶ 15.) See Cinevisions v. Fireworks Entm't, Inc., Case No. 03-CV-247553CM2 (Ontario Super. Ct. of Justice, filed April 23, 2003). Importantly, in a statement of defense filed in that case on July 11, 2003, Fireworks and CanWest "specifically denied that the [Heads of Agreement/Master Structure Agreement] was a contract (the same contract which the CanWest Parties sought to enforce before this Court) or that the CanWest Parties were bound to the terms of that

_____

[3]That complaint alleged that Plaintiff Seven Arts Pictures was an entity "owned and controlled by the owner of Cine[v]isions." (Paramount's RJN Ex. 2 ¶ 8(a).)

3

contract or any other contract" with Cinevisions.  (2011 Compl. ¶ 15.)
Once again, Paramount was not named as a defendant in that action.

That case remained pending when Plaintiff's predecessors Seven
Arts Pictures PLC and Seven Arts Pictures Inc. filed another case in
this Court on April 20, 2005 against CanWest, Fireworks, CanWest
Entertainment Inc. (another one of Content's predecessors), and
eventually Content (under its prior name ContentFilm PLC).  (2011
Compl. ¶ 16.)  See Seven Arts Pictures PLC v. Fireworks Entm't, Inc.,
Case No. CV 05-2905 ABC (FMOx) (C.D. Cal. filed April 20, 2005) (the
"2005 case").  In the operative second amended complaint filed on June
17, 2005, Plaintiffs in that case alleged claims of copyright
infringement, declaratory relief, and for an accounting, and listed,
inter alia, the disputed pictures with their copyright registration
numbers.  (Paramount RJN, Ex. 4 ¶¶ 1, 7—8.)  The complaint alleged
that Plaintiffs were either "the registered owners or assignees" or
"the grantees of exclusive rights under copyright" of the disputed
pictures and that Fireworks and CanWest had repudiated the Heads of
Agreement/Master Structure Agreement when they filed the statement of
defense in the Canadian action.  (Id. ¶¶ 8—9.)  As a result, they were
"bound by no written agreement or grant of rights to Defendants under
copyright in respect to Plaintiff's Rights in the Pictures" (id. ¶ 10)
and, although "Defendants contend that they may use and exploit the
copyrights and rights under copyright in the Pictures and transfer
such to others without authorization from Plaintiffs," they have "no
right to use or exploit the copyrights and rights under copyright in
the Pictures or to transfer such to Defendant Content without
authorization from Plaintiffs and Defendants are not the owner or

4

grantee of any copyright in the Pictures" (id. ¶ 16).  Plaintiffs
again did not sue Paramount.

This Court stayed the 2005 case on August 16, 2005 so Plaintiffs
could prosecute the Canadian action.  (2011 Compl. ¶ 16.)  Between the
stay in August 2005 and February 2008, however, Plaintiffs failed to
pursue the Canadian action, causing it and the 2005 case in this Court
to languish.  The Court twice ordered Plaintiffs to show cause why the
case should not be dismissed for their failure to prosecute the
Canadian action.  (Paramount RJN Ex. 5, Docket Nos. 65 (October 2007),
73 (February 2008).)  "[F]irmly convinced that Plaintiffs will not
pursue this action, despite the many opportunities the Court has
provided," the Court dismissed the case with prejudice in February
2008 for Plaintiffs' failure to prosecute.  (Paramount RJN, Ex. 6 at
2.)  This Court's ruling was affirmed on appeal.  See Seven Arts
Pictures PLC v. Fireworks Entm't, Inc., 329 F. App'x 726 (9th Cir.
2009) (unpublished).

After almost eight years, Plaintiff's predecessors finally
obtained a summary judgment order in the Canadian action in February
2011.  (2011 Compl. ¶ 17, Ex. A.)  It was not an adversarial
proceeding because the initially named defendants had entered
bankruptcy and had not opposed the motion, so the Canadian court
reviewed only the evidence presented by Plaintiffs.  (Id., Ex. A at 5,
¶¶ 3, 4.)  The Canadian court's order declared that "Plaintiffs are,
and have been at all times relevant to this action, the owner" of the
disputed pictures.  (Id., Ex. A at 1, 2, ¶¶ 1, 2.)  As a result, the
court declared that "Defendants have infringed and continue to
infringe the Plaintiffs' rights in the Copyrights and the Copyrighted
Works by using, granting to others the right to use, and continuing to

use and grant to others the right to use the Copyrights and Copyrighted Works." (Id., Ex. A at 3, ¶ 4.)

    With the summary judgment order in hand, Plaintiff, successor in interest to the Plaintiffs in the prior cases, has returned to this Court and filed this case, a near duplicate of the 2005 case, that reasserts claims for copyright infringement, for a declaratory judgment that Plaintiff is the owner of the disputed films, and for an accounting, all involving the same five disputed pictures.[4]  In addition to the earlier allegations, Plaintiff now alleges for the first time that the Canadian summary judgment order has established Plaintiff's ownership rights. (2011 Compl. ¶ 22.)  It has also added Paramount for the first time as a defendant, although it devotes only one paragraph in the 2011 complaint to Paramount individually:

> Plaintiff's Predecessors gave notice to Paramount in three letters dated January 20, 2005, March 18, 2005, and May 5, 2005 . . . that all sums due to the CanWest Parties with respect to the Pictures was and would become due to Plaintiff's Predecessors.  Paramount failed and refused to comply with Plaintiff's Predecessors' demand.  Plaintiff gave prompt notice to Paramount of both the Summary Judgment Order and the Denial Order and demanded that Paramount pay all sums due to the CanWest Parties or Content to Plaintiff. Paramount has failed and refused to comply with Plaintiff's demand.

(Id. ¶ 18.)  The three letters, which are attached to the Complaint, stated unequivocally that "Seven Arts claims ownership of the Pictures in this litigation" (id., Ex. B at 1), and that "CanWest in their answer in [Plaintiff's] litigation in Canada has denied there is any agreement between Seven Arts and Cine[v]isions and CanWest" over ownership of the disputed pictures (id., Ex. B at 4).  It also warned

---

[4]Plaintiff also now asserts a fourth claim against Content for attorney's fees awarded in the Canadian action.

Paramount that Content's predecessors had no further rights to
distribute or collect fees for the disputed pictures, and that
Paramount must "pay all sums due with respect to such Pictures to
Seven Arts and not to pay such sums to [Content's predecessor] until
resolution of the litigation currently pending in Canada."  (Id., Ex.
B at 1.)

     Content and Paramount separately moved to dismiss this case.  The
Court had not reached the merits of Content's motion when Plaintiff
voluntarily dismissed Content from this case in order to pursue relief
from Content in yet another forum[5], which rendered the motion moot.
(Docket Nos. 52, 53.)  In light of the dismissal of Content, Paramount
has now separately sued both Content and Plaintiff, seeking a
declaration as to which of those parties owns the copyrights to the
disputed pictures so that Paramount can pay the license fees to the
proper owner.  See Paramount Pictures Corp. v. Seven Arts Filmed
Entm't Ltd., Case No. CV 11-7748 ABC (FMOx) (C.D. Cal., filed Sept.
19, 2011).

**LEGAL STANDARD**

     A complaint survives a motion to dismiss under Rule 12(b)(6) if
it contains a "short and plain statement of the claim showing that the
pleader is entitled to relief," which does not require "detailed
factual allegations," but it "demands more than an unadorned, the-
defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, __
U.S. __, __, 129 S. Ct. 1937, 1949 (2009).  A claim must be "plausible
on its face," which means that the Court can "draw the reasonable

---

     [5]Plaintiff has raised the same claims at issue here against both
Content and Paramount in a case filed in England on September 7, 2011.
(See Docket No. 58 at Ex. A.)

1  inference that the defendant is liable for the misconduct alleged."
2  Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In
3  other words, "a plaintiff's obligation to provide the grounds of his
4  entitlement to relief requires more than labels and conclusions, and a
5  formulaic recitation of the elements of a cause of action will not
6  do."  Twombly, 550 U.S. at 555 (internal quotations and alterations
7  omitted).  Allegations of fact are taken as true and construed in the
8  light most favorable to the nonmoving party.  See Newdow v. Lefevre,
9  598 F.3d 638, 642 (9th Cir. 2010), cert. denied, 131 S. Ct. 1612
10 (2011).

11     In analyzing the sufficiency of the complaint, the Court must
12 first look at the requirements of the causes of action alleged.  See
13 Iqbal, 129 S. Ct. at 1947.  The Court may then identify and disregard
14 any legal conclusions, which are not subject to the requirement that
15 the Court must accept as true all of the allegations contained in the
16 complaint.  Id. at 1949.  The Court must then decide whether well-
17 pleaded factual allegations, when assumed true, "plausibly give rise
18 to an entitlement to relief."  Id. at 1950.  In doing so, the Court
19 may not consider material beyond the pleadings, but may consider
20 judicially noticeable documents, documents attached to the complaint,
21 or documents to which the complaint refers extensively or which form
22 the basis of the plaintiff's claims in the complaint.  See United
23 States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

24                              **DISCUSSION**

25     Paramount asserts two grounds for dismissal: (1) the statute of
26 limitations applicable to Plaintiff's copyright ownership claims has
27 expired; and (2) Plaintiff's current claims are barred by collateral
28 estoppel based on the dismissal of the 2005 case.  The Court finds

1  that dismissal is warranted on the first ground, so it will not

2  address the second.

3      **A.   Statute of Limitations**

4      Because issues involving the statute of limitations often turn on

5  disputed facts, they are "not ordinarily amenable to resolution under

6  Rule 12(b)(6)." Pesnell v. Arsenault, 543 F.3d 1038, 1042 (9th Cir.

7  2008).  Nevertheless, "[w]hen the running of the statute [of

8  limitations] is apparent from the face of the complaint . . . then the

9  defense may be raised by a motion to dismiss." Conerly v.

10 Westinghouse Elec. Corp., 623 F.2d 117, 119 (9th Cir. 1980).  In this

11 circumstance, "[a] dismissal motion should be granted, 'only if the

12 assertions of the complaint, read with the required liberality, would

13 not permit the plaintiff to prove that the statute was tolled.'"  Id.

14     The Copyright Act bars claims not brought within three years

15 after the claim has accrued.  See 17 U.S.C. § 507(b); Zuill v.

16 Shanahan, 80 F.3d 1366, 1369 (9th Cir. 1996).  Although "[i]n a case

17 of continuing copyright infringements, an action may be brought for

18 all acts that accrued within the three years preceding the filing of

19 the suit," Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th

20 Cir. 1994), when the gravamen of the claim is a dispute over

21 ownership, "[a] claim for copyright ownership is barred three years

22 from the 'plain and express repudiation' of copyright ownership,"

23 Welles v. Turner Entm't Co., 503 F.3d 728, 734 (9th Cir. 2007); see

24 also Aalmuhammed v. Lee, 202 F.3d 1227, 1230—31 (9th Cir. 2000)

25 ("Because creation rather than infringement is the gravamen of an

26 authorship claim, the claim accrues on account of creation, not

27 subsequent infringement, and is barred three years from 'plain and

28 express repudiation' of authorship.").

1     Likewise, when claims for both ownership and infringement are

2 asserted, both claims will be time-barred if the ownership claim is

3 the dispositive issue and it is untimely.  See Kwan v. Schlein, 634

4 F.3d 224, 230 (2d Cir. 2011) ("Where, as here, the ownership claim is

5 time-barred, and ownership is the dispositive issue, any attendant

6 infringement claims must fail."); see also Roger Miller Music, Inc. v.

7 Sony/ATV Publ'g, LLC, 477 F.3d 383, 389—90 (6th Cir. 2007) ("When

8 claims for both infringement and ownership are alleged, the

9 infringement claim is timely only if the corresponding ownership claim

10 is also timely."); Zuill, 80 F.3d at 1371 ("Creation, rather than

11 infringement, was the gravamen of plaintiffs' co-ownership claim, so

12 the claim did not accrue upon subsequent publication.").

13     Here, the gravamen of Plaintiff's ongoing dispute with Content is

14 ownership of the disputed pictures, so, unlike claims of ongoing

15 infringement, the statute of limitations began to run upon the "plain

16 and express repudiation" of ownership.  There is no dispute over

17 copying in this case; both Content and Paramount are alleged to have

18 been exploiting the same disputed pictures that Plaintiff claims to

19 own.  This is consistent with the Complaint, which alleges that

20 Plaintiff is entitled to a declaratory judgment that "Defendants have

21 no right to use or exploit Plaintiff's Rights in the copyrights and

22 rights under the copyright in the Pictures without authorization from

23 Plaintiff" and "neither Content nor the CanWest Parties is the owner

24 or grantee of Plaintiff's rights in any Picture." (2011 Compl. ¶ 24.)

25     In seeking a preliminary injunction in this case, Plaintiff also

26 repeatedly argued that ownership is the central issue: "For more than

27 nine years, Plaintiff and its Predecessors . . . have sought to obtain

28 redress for the wrongful unjustified conduct of [Content's

predecessors] in denying Plaintiffs' Predecessors['] interest in the copyrights to five motion pictures" at issue.  (Docket No. 9 at 1 (identifying Defendants' wrongful conduct "in denying Plaintiffs' Predecessors['] interest in the copyrights to five motion pictures described below"); id. at 2 (arguing that Content's predecessors "repudiated any contracts with Plaintiff's Predecessors which may have assigned Plaintiff[']s Predecessors['] copyright interests" to Content); id. at 11 (arguing that the issues in the Canadian action and this case are whether "the rights under copyrights in the Pictures . . . are owned by Plaintiff, and as a result Plaintiff not Content is entitled to receive the revenues from those copyrights").)  Even more generally, this new lawsuit rests on the ruling in the Canadian case that purported to find Plaintiff was the owner of the copyrights to the disputed pictures, demonstrating the crux of the issue here is, in fact, ownership.[6]

In light of Content's absence in this case, however, Plaintiff contends that its dispute with Paramount is not over ownership of the copyrights, but Paramount's continued infringement as a licensee. That is a distinction without a difference.  Paramount is alleged to be a "licensee of certain distribution rights in and to the Pictures from Plaintiff's Predecessors," which, if taken as true, would allow Paramount to defend against Plaintiff's ownership claims just as Content would have, but for Plaintiff's dismissal of Content from this case.  Thus, Plaintiff can only prevail against Paramount if it can establish that it owns the copyrights to the disputed pictures, not

---

[6]Similarly, in the 2005 case, "Defendants argue[d], and the Court agree[d], that the central issue here [was] which party actually owns these copyrights[.]"  (Paramount RJN, Ex. 1 at 6.)

Content, and Content therefore did not have the authority to license the disputed pictures to Paramount.  Like Plaintiff's dispute with Content, then, the gravamen of its claim against Paramount is ownership.

Plaintiff also suggests that the cases applying a fixed date for commencing the statute of limitations in ownership disputes were limited to disagreements between co-owners, and Plaintiff claims to be the sole owner of the disputed pictures.  Plaintiff is correct that some cases have addressed the timeliness issue in disputes between co-owners.  See, e.g., Kwan, 634 F.3d at 228 (claim of co-authorship); Aalmuhammed, 202 F.3d at 1230 (dispute between authors of joint work); Zuill, 80 F.3d at 1369 (claim of co-ownership).  However, as one leading commentator explained, "the same considerations would seem at least equally applicable to claims of sole authorship."  3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.05[C][2] (2011).  And other cases have applied the same test in disputes over sole ownership, not just co-ownership.  See, e.g., Welles, 503 F.3d at 733 (claim of sole ownership of film and rights to home video distribution); Roger Miller, 477 F.3d at 386 (dispute over sole ownership of songs).[7] Thus, notwithstanding Plaintiff's attempt to limit the fixed accrual date to disputes between co-owners, that test applies to its claim of sole ownership here.

_____

[7]In a case decided before Roger Miller, the Sixth Circuit explained that it was "extending" the test for the accrual date of ownership claims between co-owners to "others in close relationships, such as those who transfer copyright ownership via contract."  Ritchie v. Williams, 395 F.3d 283, 288 n.5 (6th Cir. 2005).  Even if this test applied here, it is met because Plaintiff alleges that it had a contractual relationship with Content, Paramount's licensor, that has since been repudiated.

The face of Plaintiff's Complaint demonstrates that its ownership claims in this case accrued no later than 2005, and likely even as early as 2002, when it filed multiple complaints against Content's predecessors alleging ownership interests in the disputed pictures and admitting that Content was signaling "plain and express repudiation" of Plaintiff's ownership.  The 2002 complaint claimed that Plaintiff's predecessor Cinevisions had at least a co-ownership interest in the disputed pictures by way of the Heads of Agreement/Master Structure Agreement, and that Content's predecessors had interfered with those rights.  Then, in 2003, Plaintiff's predecessors filed the Canadian action, asserting the same claims; in response, Plaintiff received unequivocal confirmation that Content's predecessors denied that the Heads of Agreement/Master Structure Agreement "was a contract . . . or that [they] were bound to the terms of that contract or any other contract" with Cinevisions.  (2011 Compl. ¶ 15.)  Even Plaintiff admits that this amounted to a "plain and express repudiation" of Plaintiff's ownership interest from Content.  (Opp. 20.)  Based on this repudiation, Plaintiff then filed the 2005 case, alleging that it owned the copyrights of the disputed films and that Content was infringing.  (Id. ¶ 16.)  All of these acts indicate that Plaintiff knew no later than 2005 that Content plainly and expressly repudiated Plaintiff's ownership interests in the disputed pictures.

During that same period in 2005, because Paramount was Content's licensee, Plaintiff also informed Paramount that Content was repudiating Plaintiff's ownership interest in the disputed pictures, which compelled Paramount to pay any licensing fees to Plaintiff. (2011 Compl., Ex. B.)  In a series of letters Plaintiff attached to the current Complaint, Plaintiff told Paramount that "Seven Arts

claims ownership of the Pictures in this litigation" and "CanWest in their answer in [Plaintiff's] litigation in Canada has denied there is any agreement between Seven Arts and Cine[v]isions and CanWest" over ownership of the disputed pictures.  It also warned Paramount that Content's predecessors had no further rights to distribute or collect fees for the disputed pictures, and that Paramount must "pay all sums due with respect to such Pictures to Seven Arts and not to pay such sums to [Content's predecessor] until resolution of the litigation currently pending in Canada."  As a result, as of 2005 Plaintiff knew that Paramount's licenses with Content would also have been repudiated in light of Content's repudiation of Plaintiff's ownership interests in the disputed films.

Plaintiff argues that there could not have been a "plain and express repudiation" of ownership until the Canadian court's ruling on summary judgment in 2011 that Plaintiff owned the copyrights to the disputed pictures.  This contention fails because nothing in the case law suggests that the issue of ownership must be finally adjudicated before the statute of limitations begins to run.  See Zuill, 80 F.3d at 1369 (requiring only that the "plain and express repudiation" be "communicated to the claimant" in order to trigger the limitations period).  Plaintiff's argument, if accepted, would turn the statute of limitations on its head by requiring a decision on the merits before the limitations period even begins.

Plaintiff also argues that the ruling in the Canadian action as to Plaintiff's ownership of the copyrights gave rise to an entirely new cause of action for infringement triggering a three-year limitations period starting on the date that decision was issued.  However, Plaintiff's claims remain the same, even in light of the

14

Canadian ruling, and Plaintiff cannot use the Canadian ruling to resurrect them if they are time-barred.

Therefore, because the dispositive issue in this case is ownership, and the limitations period began to run no later than 2005, Plaintiff's infringement and declaratory relief claims are time-barred unless the limitations period is tolled.

**B.   Equitable Tolling**

"Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss . . . if equitable tolling is at issue." Huynh v. Chase Manhattan Bank, 465 F.3d 992, 1003—04 (9th Cir. 2006).  Nevertheless, as with the running of the statute of limitations, equitable tolling may be determined on a motion to dismiss, so long as it can be determined from the face of the Complaint; after all, "by its very nature, equitable tolling concerns itself with the equities of dismissal for untimely filing caused by factors independent of the plaintiff," so the Court must "ask whether it would be unfair or unjust to allow the statute of limitations to act as a bar to [the plaintiff's] claims." Id. at 1004 (emphasis in original) (affirming rejection of equitable tolling based on pleadings alone).[8]

A limitations period may be tolled when "'the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass,'" Supermail Cargo, Inc. v. United States,

---

[8]Federal law applies to determine whether the statute of limitations in the Copyright Act should be equitably tolled. See Prather v. Neva Paperbacks, Inc., 446 F.2d 338, 340 (5th Cir. 1971); 3 Nimmer on Copyright § 12.05[B][3].  Plaintiff's reliance on California law is therefore unavailing.

68 F.3d 1204, 1207 (9th Cir. 1995), or when "the statute of limitations was not complied with because of defective pleadings," Scholar v. Pac. Bell, 963 F.2d 264, 268 (9th Cir. 1992). "Courts have been generally unforgiving, however, when a late filing is due to the claimant's failure 'to exercise due diligence in preserving his legal rights." Scholar, 963 F.2d at 268. For example, in Kregos v. Associated Press, 795 F. Supp. 1325, 1331 (S.D.N.Y. 1992), aff'd 3 F.3d 656, 662 (2d Cir. 1993), the court refused to equitably toll the statute of limitations during a two-year period in which the plaintiff's copyright registration was pending because that delay was "self-inflicted injury": the plaintiff knew the Copyright Office had been delaying approval of certain types of applications, yet he waited to file his application, which delayed the filing of his suit beyond the limitations period. Id.

Here, Plaintiff claims that the limitations period must be tolled during the eight years the Canadian action was pending from the filing of the action in 2003 until the issuance of the summary judgment ruling in 2011. Yet, Plaintiff's inordinate delay in prosecuting that action cannot justify tolling that period because it was a "self-inflicted injury" and inconsistent with the principles of equity. As the Complaint in this case explains, Plaintiff knew in 2005 that Paramount was licensing the disputed pictures and that the outcome of the Canadian action could affect those licenses. After Plaintiff filed the 2005 case, the Court stayed that case to give them the opportunity to return to the Canadian court to pursue the Canadian action. Had it diligently pursued this opportunity, it might have obtained a timely summary judgment order in the Canadian case and,

1   with that judgment in hand, it could have returned to this Court to

2   reactivate the 2005 case.

3        In that scenario, the 2005 case would have looked very much like

4   this one, with Plaintiff offering the summary judgment order for

5   whatever evidentiary value it held.  But instead of diligently

6   pursuing its claims at that time, Plaintiff delayed the Canadian

7   action so long that this Court was compelled to dismiss the 2005 case

8   almost three years after the stay was imposed.  Like the plaintiff in

9   Kregos, whose inexcusable delay in filing a copyright application was

10  of his own making, Plaintiff here was responsible the delay by not

11  diligently prosecuting the Canadian action and cannot now appeal to

12  equity to excuse it.

13       Plaintiff relies on two cases to avoid this result, neither of

14  which justifies tolling here.  See Young v. United States, 535 U.S.

15  43, 49–50 (2002); O'Donnell v. Vencor, Inc., 465 F.3d 1063, 1068 (9th

16  Cir. 2006) (per curiam).  In Young, the Supreme Court applied

17  equitable tolling to avoid the effect of a bankruptcy stay because

18  successive bankruptcy petitions had prevented the Internal Revenue

19  Service from taking timely steps to protect its claims against the

20  claimants.  535 U.S. at 50.  Similarly, in O'Donnell, the court relied

21  on Young to toll the limitations period in light of a bankruptcy stay

22  because the defendants' act of filing bankruptcy prevented the

23  plaintiff from timely protecting her claim against the claimants.  465

24  F.3d at 1068.  In both cases, tolling was justified based on the

25  defendants' acts of filing bankruptcy; here, in contrast, Defendants

26  did nothing to prevent Plaintiff from pursuing its rights.  In fact,

27  the Court stayed the 2005 case to enable Plaintiff to pursue its

28  claims in Canada and then return to this Court with the Canadian

1   judgment.  Plaintiff's own actions delayed the Canadian case and

2   caused the dismissal of the 2005 case, so <u>Young</u> and <u>O'Donnell</u> are

3   inapposite.

4        Thus, the running of the limitations period was not equitably

5   tolled while the Canadian action was pending.  Plaintiff's current

6   claims are therefore untimely under the Copyright Act.

7                            **CONCLUSION**

8        Plaintiff's Complaint demonstrates that its claims accrued no

9   later than 2005, and because equitable tolling does not apply,

10  Plaintiff's claims are therefore untimely.  Plaintiff's Complaint is

11  DISMISSED WITH PREJUDICE, as any amendment would be futile.

12       **IT IS SO ORDERED.**

13

14       **DATED:**   _____   _____

                                    **AUDREY B. COLLINS**
15                                  **CHIEF UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28